THE STATE OF KANSAS, *on the relation of the Board of Regents of the State Normal School*, v. S. G. STOVER, *as Treasurer of the State of Kansas.*

1. CASE, *Followed.* The case of *Martin v. Francis*, 13 Kas. 220, cited and followed.

2. NORMAL SCHOOL FUND — *Interest, How Drawn from State Treasury.* The statutes of the state require that all moneys derived from the sale of lands of the state normal school, both principal and interest, less the commissions allowed for the sale thereof, shall be paid into the state treasury, where it constitutes the state normal school fund. The interest on this fund is paid to and received by the state treasurer as an officer of the state, and the statute requires him to deposit it in the state treasury. The interest of this fund cannot be drawn from the state treasury by the board of regents of the state normal school, or any officer thereof, except in pursuance of an act of the legislature specifically authorizing the same to be done, passed within two years prior thereto.

*Original Proceeding in Mandamus.*

ACTION of *mandamus* by *The State*, on the relation of the board of regents of the state normal school, at Emporia, to compel *S. G. Stover*, as state treasurer, to pay certain moneys to the treasurer of said board. The material facts appear in the opinion, filed October 10, 1891.

*J. Jay Buck*, and *I. E. Lambert*, for plaintiff.

*John N. Ives*, attorney general, for defendant.

The opinion of the court was delivered by

HORTON C. J.: This is an action of *mandamus* by the state of Kansas, upon the relation of the board of regents of the state normal school, at Emporia, against S. G. Stover, the state treasurer, to compel him to pay to the treasurer of the board $1,700 upon its written order, from interest in his hands, on the state normal school fund. The state treasurer refuses to pay the order presented, and also refuses to pay any other order of the board of regents, upon the ground that there has been no appropriation by the legislature of any moneys accruing from the interest of the state normal school fund, as required by the constitution of the state. Section 24 of article 2 of the constitution ordains, "that no money shall be drawn from the treasury, except in pursuance of a specific appropriation made by law; and no appropriation shall be for a longer term than two years." The sole question in this case is, whether the interest of the state normal school fund can be disbursed by the treasurer of the state upon the orders of the board of regents of the state normal school without an appropriation by the legislature. In 1863, the legislature of the state established and permanently located at Emporia a state normal school. At the same time it set apart and reserved as a perpetual endowment for the support and maintenance of the normal school certain lands granted to the state by the fourth subdivision of the third section of the act of congress admitting Kansas into the union. (Laws of 1863, ch. 57; ¶¶ 6310, 6312, Gen. Stat. of 1889.) In 1872, the legislature passed an act providing for the sale of lands belonging to the normal school. Section 4 of that act provided: "All moneys derived from the sales of lands under the provisions of this act, both principal and interest, less the amount of commissions allowed by the board of directors for the sale thereof, shall be paid into the state treasury, where it shall constitute the 'state normal school fund,' for said institution." (Laws of 1872, ch. 189; ¶ 6333, Gen. Stat. of 1889.) In 1886, the legislature granted to the normal school a further endowment of 12 sections of

land. (Laws of 1886, ch. 156.) In 1879, the legislature en-
acted the following provision: "All moneys belonging to the
. . . state normal school fund . . . shall be depos-
ited with and paid to the state treasurer, and be subject to the
order of the board of school-fund commissioners." (Laws of
1879, ch. 166, § 49; ¶ 6594, Gen. Stat. of 1889.) Sec. 117
of ch. 166, as amended by the Laws of 1883, ch. 143, § 1, now
reads:

"Said board of commissioners shall have the power, and
it is hereby made their duty, from time to time to invest
any moneys belonging to the   .   .   .   state normal school
fund,   .   .   .   in the bonds of the state of Kansas or of
the United States, school-district bonds of the several school
districts of the state of Kansas, bridge, court-house bonds, or
in county, township, or city refunding bonds of the several
counties, townships and cities of the state of Kansas." (Gen.
Stat. of 1889, ¶ 6654.)

From the provisions of § 4, chapter 189, Laws of 1872, and
§ 49, chapter 166, Laws of 1879, we are of the opinion that
all moneys derived from the sale of the lands of the normal
school, both principal and interest, less the commissions for
the sales of the lands, are expressly required to be paid into
the state treasury. These sums constitute "the state normal
school fund." The interest on this fund, which the board of
regents, through its president and secretary, now desire to
draw from the possession of the defendant, who is the treas-
urer of the state, is rightfully in his hands as state treasurer.
It is therefore rightfully in the state treasury. If it is in the
state treasury, and rightfully there, then it can-
1. Case, followed.   not be drawn therefrom except in pursuance of
an act of the legislature specifically authorizing the same to
be done. (*Martin v. Francis*, 13 Kas. 220.)

There was no appropriation made at the late session of the
legislature for the payment of the class of orders or warrants
issued to the state treasurer by the president and secretary of
the board of regents. As the interest, as well as the princi-
pal, of the state normal school fund is rightfully and legally
in the state treasury, the state treasurer has no lawful power,

under the provisions of the constitution of the state, to honor or pay the order drawn upon him. It is contended, however, that the language of § 4, chapter 189, Session Laws of 1872, and of § 3, chapter 156, Laws of 1886, which authorizes the interest of the school fund to be subject to the order of the president and secretary of the board of regents, and permits them to use the same as the needs of the school shall require, make the state treasurer the agent of the board of regents, and that the interest derived from the state normal school fund is to be held by the state treasurer as the agent of the board, not otherwise. The statute, however, expressly provides that the interest, as well as the principal, "shall be paid into the state treasury;" not that it shall be paid to the person holding the office of state treasurer, or to the agent of the board of regents. The provision in the statute for the board of regents to use the interest for the support and maintenance of the state normal school must be read in connection with the provisions of the constitution of the state, and the use by the board is subject to the limitations prescribed in the constitution. (Const., art. 2, § 24.)

The contention that the board of regents, under the statute, has the power to use the interest on the state normal school fund without an appropriation by the legislature, is disposed of by the decision in *Martin v. Francis*, supra. The legislature, in 1871, by chapter 39, § 17, provided for the creation of an insurance fund out of the fees to be paid to the state superintendent of insurance, and also provided that the fees should be paid into the state treasury by the superintendent of insurance when collected. In another section of the same act, it was provided that the expenses of the insurance department should be paid out of the insurance fund upon the order of the superintendent of insurance. This court, in construing this statute, decided that, although it expressly stated that the expenses of the insurance department were to be paid out of the insurance fund upon the order of the superintendent of insurance, they could not be so paid except in pursuance of an act of the legislature specifically authorizing the same to

be done.   The language referred to in chapter 189, Laws of
1872, and chapter 156, Laws of 1886, as to the use of the
interest of the normal school fund by the board of regents, is
similar to the language of the statute of 1871 concerning the
use of the insurance fund by the superintendent of insurance.
The construction given by this court to the statute of 1871,
relating to the insurance department, and § 24 of article 2 of
2. Normal school  the constitution of the state, if followed in this
fund—interest,
how drawn   case, forbids the board of regents to use the inter-
from state
treasury.   est of the normal school fund rightfully in the
state treasury, except in pursuance of an appropriation by the
legislature, passed within two years prior thereto.   We have
no disposition to reconsider or change the decision in *Martin
v. Francis,* supra.

Again, it is contended that, as the legislature in 1877 ex-
pressly enacted "that no appropriation should be made for the
state normal school in the future;" and again enacted in 1886
"that the legislature would not in the future appropriate any-
thing for salaries or incidental expenses for the state normal
school," these expressions of the legislature are controlling in
favor of the board of regents using the interest on the state
normal school fund without any specific appropriation, as, in
the absence of an appropriation, the school cannot be success-
fully carried on without the use of the interest.   These pro-
visions of the legislature are not binding upon any subsequent
legislature, and in fact the subsequent legislatures have re-
garded them "more in the breach than in the observance."
In 1879, the legislature appropriated $25,000 for the purpose
of rebuilding the state normal school.   In 1885, the legisla-
ture appropriated moneys to the school, not only for fuel,
water, gas, and repairs, but also for furniture, mathematical
and chemical apparatus, for designs for the drawing depart-
ment, etc.   In 1891, the legislature appropriated for the school
for the years of 1891, 1892, and 1893, in addition to the
money provided for fuel, water, gas, and permanent improve-
ments, over $2,000 for incidental expenses.   But even if the
legislature had said, or had intended to say, that the board of

regents could use the interest of the state normal school fund, which, under the statute, was rightfully in the treasury of the state, without any specific appropriation, such an act would be in violation of the constitution, and void. We have fully considered the practice which has prevailed so many years between the board of directors or regents of the normal school and the state treasury department, in allowing orders to be drawn and paid out of the state treasury without any special appropriation; but the practice of the school and state officials cannot be sustained, if contrary to the provisions of the constitution. That is the paramount law. Section 24 of article 2 of the constitution is clear and emphatic in its terms. It has already been construed by this court.

Finally, it is suggested, not very strongly, however, that, on account of the provisions of the several acts of the legislature referred to, there is a contract executed between the state and state normal school, whereby the endowment of the lands, together with the proceeds thereof, are in the nature of an absolute donation or grant which cannot be repealed, changed, or impaired; that neither the state nor the legislature has any control whatever over the endowment fund, whether it be principal or interest, and that the officials of the state normal school have the exclusive authority to use for its support and maintenance all the funds of the institution. The complete reply to this suggestion is, that the state normal school is not a corporation *de jure* or *de facto*. It has never organized, or attempted to organize under the statutes relating to corporations. The legislature has no authority to pass any special act conferring corporate powers, and has not attempted to do so, so far as the state normal school is concerned. The governing board of the school is appointed by the governor and confirmed by the senate. No action affecting the normal school, its property, or its endowment, can be prosecuted in the name of the normal school, but such actions are to be prosecuted in the name of the state. (Laws of 1877, ch. 179; Gen. Stat. of 1889, ¶¶ 6358–6361.) The state normal school is under the control of the legislature, and is not a separate or

independent corporation. It is a part of the great public school system of the state, and, as a part of that beneficial system, is entitled to the generous support and liberal maintenance of the people. It is unfortunate that the attention of the late legislature was not expressly called to the necessity of a special appropriation, so that the interest on the state normal school fund could be used as the wants and needs of the institution demand. This seems to have been overlooked, and has been overlooked by the state and school authorities for many years. The provisions of the state constitution, however, are now invoked by the attorney general and the state treasurer, both state officials having responsible duties and powers, against the further payment of any order of the board of regents, until an appropriation is passed. We are called upon to say whether the provisions of the constitution, which is the paramount law, forbid further payments. We think they do, and must therefore hold that the interest on this school fund cannot be disbursed by the state treasurer without an appropriation by the legislature. We regret the unfortunate condition in which this decision may temporarily leave the normal school, which has been so successful in its operations, and so beneficial in its influences; but whatever the present consequences may be, we perform a single and unmixed duty in declaring our views upon the matters submitted. We cannot do otherwise. The constitution is the supreme law, and the acts of the state and school officials must be in obedience to its provisions.

The writ prayed for will be denied.

All the Justices concurring.